## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIKUNJ DEVANI,<br><br>       *Plaintiff*,<br><br>   v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>       *Defendants*. | No. 22-cv-01932 (DLF) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Nikunj Devani filed this action to compel U.S. Citizenship and Immigration Services (USCIS) and several affiliated government officials to process his Form I-526, formally known as "Immigrant Petition by Alien Investor," under the EB-5 Immigrant Investor Program. Compl. ¶ 1, Dkt. 1.  Before the Court is USCIS's Motion to Dismiss.  Dkt. 6.  For the reasons that follow, the Court will dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

### A.    Statutory and Regulatory Background

The EB-5 program aims to promote foreign investment in the United States.  *See* Compl. ¶ 14; 8 U.S.C. § 1153(b)(5)(A).  Under the regulations in effect at the time of Devani's application, a foreign investor could become eligible for an EB-5 immigrant visa if he invested either $1,000,000 for standard investments or $500,000 in a so-called "targeted employment area," Compl. ¶ 15; 8 C.F.R. § 204.6(f) (2016), which may include projects in designated regional centers that are "involved with the promotion of economic growth" (the Regional Center Program), 8

C.F.R. § 204.6(e), (m) (2016); *see also Da Costa v. Immigr. Inv. Program Off.*, No. 22-cv-1576, 2022 WL 17173186, at *1 (D.D.C. Nov. 16, 2022).  The petitioner's investment must also have created full-time employment for at least ten United States citizens, permanent residents, or other immigrants authorized to be employed in the United States.  8 C.F.R. § 204.6(e), (j)(4) (2016).  To obtain an EB-5 visa, a foreign investor must first file a Form I-526 petition with USCIS.  *Id.* § 204.6(a); Compl. ¶ 16.  "Once the [I-526] petition is processed and a visa becomes available— which may take years—the immigrant advances to 'conditional' lawful permanent resident status." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020) (citing 8 U.S.C. § 1186b(a)); *see also* Compl. ¶ 19.  In adjudicating I-526 petitions, USCIS adheres to a "visa availability" approach, which means it prioritizes adjudicating applications, on a modified "first-in, first-out" basis, by petitioners from countries that have yet to meet their visa availability cap determined by Congress.  Compl. ¶ 18; *Da Costa*, 2022 WL 17173186, at *3.

Authorization for the Regional Center Program expired on June 30, 2021.  *See Da Costa*, 2022 WL 17173186, at *2.  At that point, USCIS announced that it would not accept new petitions nor act on any pending petitions dependent on the Regional Center Program.  *Bromfman v. USCIS*, No. 20-cv-571, 2021 WL 5014436, at *4 n.4 (D.D.C. Oct. 28, 2021) (citing USCIS, "About the EB 5 Visa Classification" (Oct. 4, 2021), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-the-eb-5-visa-classification (last accessed Oct. 12, 2021)).  Nine months later, the Regional Center Program was reauthorized, and USCIS resumed processing I-526 petitions.  *See DaCosta*, 2022 WL 17173186, at *2 (citing EB-5 Reform and Integrity Act of 2022, Pub. L. 117-103, § 103, 136 Stat. 1070, 1075 (2022)); *Bega v. Jaddou*, No. 22-cv-02171, 2022 WL 17403123, at *2 (D.D.C. Dec. 2, 2022) (same).

### B.    Factual Background

Devani, a citizen of India, invested $500,000 in a commercial enterprise in Long Island City, New York, in a designated regional center under the EB-5 program that Devani alleges satisfied all of the program's requirements.  Compl. ¶¶ 21–23, 26.  Devani filed an I-526 petition, along with all relevant documentation and filing fees, which USCIS received on October 29, 2019.  *Id.* ¶ 24.  USCIS has not yet taken action on his petition.  *Id.* ¶ 25; Joint Status Report of Jan. 1, 2023, Dkt. 9.  Devani filed this action on July 4, 2022, seeking declaratory and injunctive relief compelling USCIS to process his I-526 petition under the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedure Act (APA), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Compl. ¶¶ 69, 71, 76.  USCIS moved to dismiss for failure to state a claim under Rule 12(b)(6).  *See* Defs.' Mem. in Supp. of Mot. to Dismiss at 1–2, Dkt. 6-1.

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely

consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.   ANALYSIS

Courts review claims of unreasonable delay in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). "The central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotation marks omitted).

"This Circuit applies the six-factor test established by *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ('*TRAC*'), to determine whether agency action has been unreasonably delayed." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020). Under that test, the Court must balance the following six *TRAC* factors:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quotation marks omitted).  These "factors are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80).

Contrary to Devani's assertion, *see* Pl.'s Resp. to Defs.' Mot. to Dismiss at 2–4, Dkt. 7, the Court may apply the *TRAC* factors at the motion to dismiss stage.  *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49–50 (D.D.C. 2021) (collecting cases), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021); *Bega*, 2022 WL 17403123, at *4 n.2; *Da Costa*, 2022 WL 17173186, at *8; *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. Aug. 17, 2021).  Devani relies on several out-of-circuit cases that declined to assess *TRAC* factors until after discovery, *see* Pl.'s Resp. at 2–3, but "the majority view expressed by Judges on this Court . . . is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay," *Bega*, 2022 WL 17403123, at *4 n.2.  And in the only in-circuit case Devani cites, the court simply "*exercise[d its] discretion* [to] decline to consider whether the agency ha[d] unreasonably delayed adjudication of the plaintiffs' visa applications until it ha[d] a sufficient record to answer that question."  *Addala v. Renaud*, No.

20-cv-2460, 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021) (emphasis added).  Because this "record contains enough facts to evaluate the *TRAC* factors," the Court will "do just that."  *Da Costa*, 2022 WL 17173186, at *8 (quotation marks omitted).  In doing so, the Court finds that Devani has failed to state a claim of unreasonable delay.

### A.      Factors 1 and 2: The rule of reason and lack of congressional timetable

The first *TRAC* factor is often considered the "most important" of the six.  *In re Core Commc'ns, Inc.*, 531 F.3d at 855.  But courts routinely consider the first two TRAC factors together.  *See, e.g.*, *Da Costa*, 2022 WL 17173186, at *8; *Bega*, 2022 WL 17403123, at *6; *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300–05 (D.D.C. 2014).  In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Int.*, 74 F. Supp. 3d at 300.  Both factors favor USCIS in this case.

As to the first factor, USCIS's adjudication of I-526 petitions is governed by a rule of reason.  Under the visa availability approach, USCIS processes petitions on a modified first-in, first-out basis, prioritizing "petitions for investors for whom a visa is either now or soon will be available" given the statutory caps.  *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach* (Apr. 2021), *available at* https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach        (last accessed Apr. 12, 2023).[1]  "In other words, an immigrant who filed earlier than another but hails

---

[1] Though Devani asks the Court to ignore facts outside the pleadings, Pl.'s Resp. at 2, the Court "may take judicial notice of information posted on official public websites of government agencies."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022) (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)); *see also Thakker v. Renaud*, No. 20-cv-1133, 2021 WL 1092269, at *1 n.4 (D.D.C. Mar. 22, 2021).

from a country that has already met its per-country cap for visas for that year may find herself behind the other applicant." *Da Costa*, 2022 WL 17173186, at *3.  That Devani faces a delay despite being "from an underrepresented country where visas are currently available," Pl.'s Resp. at 5, does not mean that "there's no rhyme or reason to [USCIS's] approach," *id.*, because other applicants may already be ahead of him in line.  *See Palakuru*, 521 F. Supp. 3d at 51; *Thakker*, 2021 WL 1092269, at *6.  Courts have consistently concluded that USCIS's method for processing I-526 petitions supplies a rule of reason sufficient to satisfy the first *TRAC* factor.  *See Da Costa*, 2022 WL 17173186, at *8 (collecting cases).

As to the second factor, Congress has not mandated a binding timeline for USCIS's processing of I-526 petitions.  Although "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," Compl. ¶ 30 (quoting 8 USC § 1571(b)), "a sense of Congress resolution is not law," *Emergency Coal. to Defend Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008).  Thus, there is no congressional timeline that binds the processing of I-526 petitions.  *See Da Costa*, 2022 WL 17173186, at *9 (deeming the sense of Congress as "merely hortatory"); *Palakuru*, 521 F. Supp. 3d at 51 (interpreting it as "precatory rather than binding").

In sum, the first two *TRAC* factors favor USCIS, as USCIS's approach to processing I-526 petitions is governed by a rule of reason that is not bound by a statutory timetable.

Finally, the length of delay here is not unreasonable as a matter of law.  Devani submitted his I-526 petition approximately forty-one months ago.  *See* Compl. ¶ 1.  But, as explained, for nine of those months (from June 2021 to March 2022) USCIS's congressional authority to process

I-526 petitions had lapsed.  *See Da Costa*, 2022 WL 17173186, at *2.[2]  Accordingly, USCIS's delay in processing Devani's petition is effectively about thirty-two months.  *See id.* at *10 (omitting this same nine-month lapse from calculation of the relevant delay period).  A thirty-two-month delay is not out of line with periods that courts have consistently found not unreasonable for processing an I-526 petition.  *See, e.g.*, *Bega*, 2022 WL 17403123, at *7 (between thirty-two and forty-month delay); *Telles v. Mayorkas*, No. 21-cv-395, 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (thirty-one months, excluding nine-month authorization gap).  Moreover, USCIS's Case Processing Time for I-526 petitions from Indian applicants is currently fifty-two months— meaning 80% of adjudicated cases over the past six months waited much longer than Devani.  *See* USCIS, *Check Case Processing Times, available at* https://egov.uscis.gov/processing-times/ (last accessed Apr. 12, 2023).  That the average I-526 processing time has increased since Devani filed his petition in 2019, *see* Compl. ¶ 26, is immaterial.  It is the *current* rate that is the relevant comparator, as the petitions adjudicated in the last six months were filed, on average, in late 2018 or early 2019 (52 months ago).  Thus, given the current processing rate, Devani has been waiting less time than similarly situated Form I-526 petitioners from India.  While such comparable delays do not alone render this one reasonable, *see* Pl.'s Resp. at 6, these precedents nevertheless "reinforce" the Court's determination that Devani has not stated a claim of unreasonable delay.  *Palakuru*, 521 F. Supp. 3d at 52 n.7.

---

[2] Courts in this district have uniformly held that USCIS's authority to process Forms I-526 for the Regional Center Program lapsed between June 2021 and March 2022.  *Da Costa*, 2022 WL 17173186, at *6 (collecting cases).  Devani's citation to a Northern District of California case, Pl.'s Resp. at 5–6 (citing *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-cv-02487, 2022 WL 2290594 (N.D. Cal. June 24, 2022)), is not to the contrary.  *Behring* addressed a different, issue— whether "[t]he agency . . . had authority to continue to regulate existing regional centers even during the authorization gap."  *DaCosta*, 2022 WL 17173186, at *7.

### B.      Factors 3 and 5: Prejudice of health, welfare, and other interests

*TRAC* factors three and five concern the "health and welfare . . . at stake" and "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80.  These factors are often considered in tandem.  *See, e.g.*, *Palakuru*, 521 F. Supp. 3d at 53.  Here, they favor USCIS.

Although Devani alleges that the delay in processing his visa application has caused him substantial financial and immigration-related harms, Compl. ¶¶ 27–29, neither injury alone or in combination rise to the degree of harm countenanced by factors three and five.  "[F]inancial risks the [plaintiff] undertook are inherent in the I-526 application process."  *Da Costa*, 2022 WL 17173186, at *10 (quotation marks and alteration omitted).  So, too, is uncertainty an inherent part of the immigration process.  *See Telles*, 2022 WL 2713349, at *4 (finding inability to "move forward with his life in the United States" and "expense, stress, and uncertainty" to fall short under these factors).  Devani's alleged interests fall far short of those credited in other cases that, for example, pose a significant threat to physical health or safety.  *See, e.g., DaCosta*, 2022 WL 17173186 at *10 (finding that plaintiffs' allegations that they must remain in a location where they "fear for their lives" and have limited "access to drinking water, electricity, and other public services . . . place factors three and five in their column").  Because Devani's complaint does not allege comparable facts, neither of these factors weigh in his favor.

### C.      Factor 4: The agency's competing priorities

The fourth factor considers the effect of prioritizing one agency action over others.  *See TRAC*, 750 F.2d at 80.  Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight."  *Da Costa*, 2022 WL 17173186, at *10 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)).  Courts are generally hesitant to reorder[] agency priorities" when there is no basis "to think that judicial intervention would advance either fairness or Congress's policy objectives."

*In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991).  In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Milligan*, 502 F. Supp. 3d at 319 (citing *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *Barr Labs.*, 930 F.2d at 75) (quotation marks and alterations omitted).

The fourth factor thus weighs strongly in favor of USCIS.  If the Court were to grant Devani's requested relief, this would require the agency to reorder its priorities and place him at the front of the queue.  *See Palakuru*, 521 F. Supp. 3d at 52; *Da Costa*, 2022 WL 17173186, at *10; *Thakkar*, 2021 WL 1092269, at *7.  This relief would in turn unfairly prejudice similarly situated petitioners waiting in the current USCIS backlog.  *See Da Costa*, 2022 WL 17173186, at *10 (citing USCIS, *USCIS Announces New Actions to Reduce Backlogs, Expand Premium Processing, and Provide Relief to Work Permit Holders* (Mar. 29, 2022), https://perma.cc/NBW4-6ZAQ).  Devani's contention that his petition merits greater priority than others because India is an underrepresented country, Pl.'s Resp. at 8, fails to account for the fact that there may be many other applicants from India whose petitions are ahead of his in the processing queue.  Because Devani does not plausibly allege any facts that place factor four in his favor, this factor too goes in USCIS's column.

### D.    Factor 6: Impropriety

The final *TRAC* factor, which provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, is neutral here.  In his complaint, Devani alleges no facts to plausibly support his conclusory claim that the "delays in processing [his] petition are part of an overall

effort on the part of [USCIS] to delay processing times for immigrants seeking benefits."  Compl. ¶ 38.  Devani points only to the increase in "overall average case processing [times] . . . over the past two fiscal years . . . even as case receipt volume markedly decreased."  *Id.*  But alleging the *fact* of increased delays does nothing to show that its *cause* is impropriety.  The symptoms are equally consistent with several other possible causes, including the intervening COVID-19 pandemic.  *See Iqbal*, 556 U.S. at 678 (explaining that a complaint must do more than "plead[] facts that are merely consistent with a defendant's liability" (quotation marks omitted)).

In his opposition to USCIS's motion to dismiss, Devani elaborates on his allegation of impropriety, arguing that "USCIS has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications contrary to law."  Pl.'s Resp. at 9 (citing Quinn Owen, *DHS chief defends Biden admin on immigration, says Trump 'gutted' system*, ABC News, Mar. 1, 2021, in which the agency allegedly admitted to "'gutt[ing]' the U.S. immigration system").  But it "is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 430 n.21 (D.D.C. 2020) (quotation marks and alteration omitted)).  And even if the Court were to consider Devani's contention, he fails to plausibly allege facts supporting his claim of impropriety. The only fact he cites—a news article—addressed unaccompanied migrant children at the border, not the EB-5 program.  Finally, USCIS's nine-month pause in adjudicating I-526 petitions during the statutory authorization lapse was not reckless or "in violation of the law," Pl.'s Resp. at 10, but was rather compelled by the law.  *See Da Costa*, 2022 WL 17173186, at *6.

\* \* \*

In sum, because each of the *TRAC* factors favors USCIS, Devani has failed to adequately allege that USCIS unreasonably delayed adjudicating his I-526 petition.  Thus, his APA,

Mandamus, and Declaratory Judgment Act claims fail. *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (rejecting a plaintiff's mandamus claim for the same reasons the court rejected the plaintiff's claim for a declaratory judgment under the APA).  The Court therefore also denies Devani's request for attorneys' fees, costs, and applicable expenses. *See* 28 U.S.C. § 2412 (stating only a "prevailing party" may receive fees and expenses).

## CONCLUSION

For the foregoing reasons, the Court will grant USCIS's Motion to Dismiss.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

April 12, 2023

12